UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAVONTAE WRIGHT,
individually and on behalf of
all others similarly situated,

       Plaintiff,

v.                    Case No.: 8:20-cv-985-T-33CPT

AR RESOURCES, INC.,
PREMIUM ASSET RECOVERY CORP.,
and JOHN DOES 1-25,

       Defendants.

_____/

**ORDER**

    This cause comes before the Court pursuant to the Motion to Dismiss Plaintiff's Complaint filed by Defendant Premium Asset Recovery Corporation ("PARC") on May 27, 2020 (Doc. # 9) and the Motion to Dismiss Complaint filed by Defendant AR Resources, Inc. ("ARR"), on June 3, 2020 (Doc. # 12). PARC has joined in ARR's Motion. (Doc. # 34). Plaintiff Javontae Wright responded on July 7, 2020. (Doc. ## 25, 26). For the reasons given below, PARC's Motion is granted and ARR's Motion is granted in part and denied in part as set forth herein.

**I.   Background**

    On April 29, 2020, Wright initiated this putative class action lawsuit against Defendants for violations of the Fair

1

Debt Collection Practices Act (the "FDCPA"). (Doc. # 1). According to the complaint, Wright allegedly incurred a debt to "the EMA of Tampa Bay – St. Joes North." (Id. at ¶ 23). Wright alleges that PARC is the current owner of the debt and an alleged debt collector under the FDCPA. (Id. at ¶¶ 10, 27). PARC then contracted with ARR, also allegedly a debt collector, to collect the debt. (Id. at ¶ 27).

To that end, on May 8, 2019, ARR sent Wright an initial collection letter. (Id. at ¶ 29). The May 8 letter, which Wright attached to her complaint, stated the balance of the debt, explained that the debt had been sold to PARC, and that ARR had been contracted to collect the outstanding balance. (Doc. # 1-1). After explaining the ways in which Wright could pay the balance, the letter stated: "Please be advised that our client is a credit reporting client. Your credit report may have a negative impact if we do not hear from you." (Id.). Immediately below that sentence, the May 8 letter also contained the following language, in the same font as the rest of the letter but emphasized in bold:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume that the debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of the debt or any portion thereof, this office

will obtain verification of the debt or obtain a
copy of a judgment and mail you a copy of such
judgment or verification. If you request this
office in writing within 30 days after receiving
this notice, this office will provide you with the
name and address of the original creditor, if
different from the current creditor.

This is an attempt to collect a debt and any
information obtained will be used for that purpose.
This communication is from a debt collector.

(Id.).

According to Wright, the language about a potential
negative impact on her credit report "completely overshadows"
the rest of the notice "by scaring Plaintiff into making
payment immediately to avoid a 'negative impact' credit
reporting instead of exercising his statutory right to
dispute the debt as provided by the FDCPA." (Doc. # 1 at ¶¶
34-35). In addition, Wright alleges that the "negative
impact" language "coerces payment," and is "deceptive and
misleading" as well as "confusing and threatening." (Id. at
¶¶ 36-38).

Based on these allegations, Wright claims that
Defendants have violated the FDCPA, specifically 15 U.S.C. §
1692e (Count I) and 15 U.S.C. § 1692g (Count II). (Id. at ¶¶
43-52). Wright also purports to bring these claims on behalf
of the following class, pursuant to Federal Rule of Civil
Procedure 23:

3

> [A]ll individuals with addresses in the state of
> Florida, to whom Defendant [ARR] sent a collection
> letter attempting to collect a consumer debt, on
> behalf of defendant [PARC], that included deceptive
> threats regarding negative impact of the credit
> report . . ., which letter was sent on or after a
> date one (1) year prior to the filing of this action
> and on or before a date twenty-one (21) days after
> the filing of this action.

(Id. at ¶¶ 13-14).

Defendants have now each filed Motions to Dismiss the
complaint, to which Wright has responded. (Doc. ## 9, 12, 25,
26). The Motions are ripe for review.

## II.  Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), the
Court accepts as true all the allegations in the complaint
and construes them in the light most favorable to the
plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250,
1262 (11th Cir. 2004). Further, the Court favors the plaintiff
with all reasonable inferences from the allegations in the
complaint. Stephens v. Dep't of Health & Human Servs., 901
F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to
> raise a right to relief above the speculative
> level.

4

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Generally, the Court must limit its consideration to well-pled factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. **Analysis**

To succeed on a claim under the FDCPA, the plaintiff must establish that (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. McCray v. Deitsch & Wright, P.A., 343 F. Supp. 3d 1209, 1214-15 (M.D. Fla. 2018). Neither party disputes that Wright has been the object of collection activity, but PARC argues that Wright has insufficiently pled its status as a debt collector under the FDCPA because the allegations on

that point are "conclusory and formulaic recitations of the FDCPA's statutory language." (Doc. # 9 at 6). For its part, ARR concedes for purposes of the Motion that it is a debt collector but argues that it has not violated the FDCPA. (Doc. # 12 at 4). Specifically, ARR argues that cases from other Circuits demonstrate that the "credit reporting" language in the May 8 letter does not overshadow a debtor's understanding of his rights or violate the FDCPA under the prevailing least-sophisticated-consumer standard. (Id. at 4-10).

###### A.    Whether PARC is a debt collector under the FDCPA

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Accordingly, an entity can be considered a "debt collector" either through the "principal purpose" definition or the "regularly collects" definition. See Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1315 (11th Cir. 2015) (noting that "one of the two statutory standards" under Section 1692a(6) "must be met" before an entity can qualify as a "debt collector").

To state a claim under the statute, plaintiffs must plausibly allege "sufficient factual content to enable the court to draw a reasonable inference that [the defendant] meets the FDCPA's definition of 'debt collector' and is thus subject to the Act." Kurtzman v. Nationstar Mortg. LLC, 709 F. App'x 655, 658–59 (11th Cir. 2017).

Wright responds that PARC (1) holds itself out as a debt collector through its website and numerous lawsuits; (2) is clearly a debt collector due to its purchase of the debt here and subsequent action of contracting debt collection to ARR; and (3) can be held vicariously liable for ARR's debt-collection activities. (Doc. # 26 at 4-10).

The problem with Wright's first contention is that, while PARC's website may very well contain the statements he cites and PARC may have filed the lawsuits he lists, none of this information is contained in the complaint. And the Court is disinclined to consider documents in ruling on a motion to dismiss that were attached for the first time to a plaintiff's response in opposition. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997) (explaining that, in general, courts cannot consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss).

The Court reads Wright's second and third arguments together, as the only way PARC could be vicariously liable for the actions of ARR is due to the fact that PARC purchased the debt here and then hired another entity, ARR, to do the actual collecting.

Numerous courts have held that an entity that itself meets the definition of a debt collector may be held vicariously liable for unlawful collection activities carried out by another on its behalf. See Long v. Pendrick Capital Partners II, LLC, 374 F. Supp. 3d 515, 534-35 (D. Md. 2019) (collecting cases). However, vicarious liability cannot be imposed when the principal company itself does not meet the definition of "debt collector." Deutsche Bank Trust Co. Americas v. Garst, 989 F. Supp. 2d 1194, 1202 (N.D. Ala. 2013) (citing Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379 (3d Cir. 2000) (abrogated on other grounds by Henson v. Santander Consumer USA, Inc., 137 S. Ct. 1718 (2017))); see also Davidson, 797 F.3d at 1316 (in a case outside the vicarious liability context, holding that, under the plain language of the statute, "a person who does not otherwise meet the requirements of [Section] 1692a(6) is not a 'debt collector' under the FDCPA").

The Eleventh Circuit has held that the general partners of a debt collector may be held jointly and severally liable for the partnership's violations of the FDCPA. LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1201 (11th Cir. 2010) (applying state partnership law and focusing on the relationships among the parties). But the Eleventh Circuit has not yet commented on whether entities that assign or contract debt collection activities to another person or company may be vicariously liable for that person or company's alleged violations of the FDCPA. The Third and Ninth Circuits, however, have both recently addressed this very question.

The Third Circuit held that, under the FDCPA's "principal purpose" definition, an entity that acquires debts for the purpose of collection but outsources the actual collections activity may qualify as a "debt collector" under the statute. Barbato v. Greystone Alliance, LLC, 916 F.3d 260, 261 (3d Cir. 2019) ("[A]n entity that otherwise meets the 'principal purpose' definition cannot avoid the dictates of the FDCPA merely by hiring a third party to do its collecting."). The Third Circuit's formulation of what constitutes a "principal purpose" of business goes beyond the purview of this Order. It is worth noting, though, that the court found that where the debt owner's "only business is the

purchasing of debts for the purpose of collecting on those debts, and, . . . without the collection of those debts, [the debt owner] would cease to exist," the debt owner fell "squarely within" Section 1692a(6)'s "principal purpose" definition. Id. at 268. Thus, the debt owner could be vicariously liable for the actions of the debt collection company it contracted with, if the traditional agency principles of vicarious liability and a showing of FDCPA liability could be met — issues that the Third Circuit did not address. Id. at 269.

Earlier this year, the Ninth Circuit relied on Barbato to similarly hold that "an entity that otherwise meets the 'principal purpose' definition of debt collector cannot avoid liability under the FDCPA merely by hiring a third party to perform its debt collection activities." McAdory v. M.N.S. & Assocs., LLC, 952 F.3d 1089, 1090 (9th Cir. 2020). The Third and Ninth Circuits reached this conclusion after a careful review of the plain text of the statute, the statutory context of the "principal purpose" definition, and the legislative history of the FDCPA. Barbato, 916 F.3d at 267–69; McAdory, 952 F.3d at 1093–96. In the absence of guidance from the Eleventh Circuit, the Court finds the analysis from these courts to be persuasive. See Rivas v. Midland Funding, LLC,

398 F. Supp. 3d 1294, 1302-03 (S.D. Fla. 2019) (in context of summary judgment, adopting the Third Circuit's analysis in Barbato and finding that a debt purchaser was a "debt collector" for purposes of the FDCPA).

However, the Court must still follow the Eleventh Circuit's directive that plaintiffs must plead factual content in a complaint that allows this Court to make the reasonable inference that the defendant is a debt collector. See Davidson, 797 F.3d at 1313 ("To survive a motion to dismiss [an FDCPA claim], [a plaintiff] must plead factual content that allows the court to draw the reasonable inference that [a defendant] is a debt collector."); see also Id. at 1311 (affirming dismissal of complaint where the complaint's "factual matter establishes that Capital One's collection efforts in this case related only to debts owed to it and that debt collection is only some part of, and not the principal purpose of, Capital One's business").

Wright alleges in the complaint that PARC is a debt collector under the FDCPA and "is a company that uses the mail, telephone, and facsimile and regularly engages in business the principal purpose of which is to attempt to collect debts alleged to be due another." (Doc. # 1 at ¶¶ 10-11). This is conclusory language that merely tracks the

11

language of the statute. Furthermore, the complaint contains
no factual content that would enable this Court to make the
inferential leap that PARC is a debt collector. As such, it
is insufficient. See Kurtzman, 709 F. App'x at 659 (where
complaint includes only "a conclusory, formulaic recitation
of the statutory language," a motion to dismiss is due to be
granted); compare Arango v. GMA Invs., LLC, No. 18-9813, 2019
WL 1916202, at *3 (D.N.J. Apr. 30, 2019) (denying motion to
dismiss because the complaint alleged that the debt
purchaser's principal purpose was the collection of debts and
further alleged that the debt purchaser "has no other
substantial business purpose except to purchase defaulted
receivables from creditors and then attempt collection either
directly or through third parties"); see also Reese v. Ellis,
Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1218-19 (11th
Cir. 2012) (holding that plaintiff had sufficiently alleged
that defendant law firm was a "debt collector" under the
FDCPA's "regularly collects" prong where complaint alleged
that in the year prior to the complaint's filing, "the firm
had sent to more than 500 people 'dunning notice[s]'"
containing the same or substantially similar language to the
notices at issue in that case).

This Court takes no position on whether the principal purpose of PARC's business is in fact the collection of debts. That is a factual matter best left for another day. See Mullery v. JTM Cap. Mgmt., LLC, Nos. 18-cv-549 & 18-cv-566, 2019 WL 2135484, at *3 (W.D.N.Y. May 16, 2019) (adopting the Barbato definition of debt collector but writing that "whether, in fact, JTM's 'raison d'etre is obtaining payment on the debts that it acquires,' . . . can be determined at a later stage of the litigation and may be grist for the summary judgment mill"); see also McAdory, 952 F.3d at 1093 (holding argument regarding nature of debt purchaser's business was premature at the motion-to-dismiss stage because "DNF's argument about its principal purpose highlights a factual dispute"). However, under the prevailing pleading standards, Wright must allege something more than conclusory and formulaic recitations of the statute to survive PARC's motion to dismiss. He must allege some factual content that would allow this Court to make the reasonable inference that PARC is a "debt collector" under the language of the FDCPA. See Davidson, 797 F.3d at 1311-13.

Accordingly, PARC's motion to dismiss is granted. However, because the Court believes that this deficiency is capable of being remedied, Wright will be given leave to file

an amended complaint. See Foman v. Davis, 371 U.S. 178, 182 (1962) (explaining that, in general, leave to amend should be freely given unless amendment would be futile).

**B.    Whether PARC and/or ARR violated the FDCPA[1]**

The FDCPA requires that a debt collector's written communications to the consumer contain certain information about the debt and the consumer's right to dispute the validity of the debt. 15 U.S.C. § 1692g. Section 1692g(a) requires the debt collector's initial communication to the consumer inform the consumer that, among other things, he or she has thirty days to dispute the validity of the debt and that, upon the consumer's written request within the thirty-day period, the debt collector will verify the debt and provide the consumer with the name and address of the original creditor. 15 U.S.C. § 1692g(a). Additionally, any collection activities or communications during that thirty-day period "may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt[.]" Id. § 1692g(b).

The FDCPA also prohibits "any false, deceptive, or misleading representation or means in connection with the

---

[1] Because PARC joined into ARR's Motion to Dismiss, the Court addresses their liability under the FDCPA together.

collection of any debt." 15 U.S.C. § 1692e. This includes the use of "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Id. § 1692e(10).

In the Eleventh Circuit, whether a collection notice violates Section 1692g or Section 1692e(10) is determined objectively under the "least sophisticated consumer" standard. McCray, 343 F. Supp. 3d at 1214; Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1177 n.11 (11th Cir. 1985) ("The question is not whether [a plaintiff] was deceived, but whether the 'least sophisticated consumer' would have been deceived."). "The least-sophisticated consumer standard takes into account that consumer-protection laws are not made for the protection of experts, but for the public – that vast multitude which includes the ignorant, the unthinking, and the credulous." Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1258–59 (11th Cir. 2014) (internal quotations and citations omitted). "However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." Id. at 1259. And it is presumed "that the consumer possesses a rudimentary amount of

information about the world and a willingness to read the communication with some care." <u>Edstrom-Smith v. Kass Shuler, P.A.</u>, 680 F. App'x 813, 814 (11th Cir. 2017) (internal quotations and citations omitted).

### 1.   **Plaintiff's Section 1692e Claim**

Wright alleges that the May 8, 2019, letter violates Section 1692e because it is "open to more than one reasonable interpretation, at least one of which is inaccurate" and violates Section 1692e(10) by making a false and misleading representation. (Doc. # 1 at ¶ 46). According to Wright, the letter's credit-reporting language "scar[es] Plaintiff into making payment immediately," "is threatening to the consumer and coerces payment," "is deceptive and misleading, because it states that the credit report will have a negative impact if the Defendant ARR does not hear from the consumer," and is "confusing, threatening, . . . ominous . . . [and] frightening." (<u>Id.</u> at ¶¶ 34-39).

The parties do not devote any significant part of their briefing to the Section 1692e issue, and so the Court will analyze the claim without such input. The complaint makes clear that the credit-reporting language is at the heart of both Wright's Section 1692e and Section 1692g claim. <u>See</u> (Doc. # 1 at ¶¶ 34-40). Again, the May 8 letter stated: "Please be

advised that our client is a credit reporting client. Your credit report may have a negative impact if we do not hear from you." (Doc. # 1-1).

The Court fails to discern how this language is false, deceptive, or misleading. Wright does not allege that Defendants would not, in fact, potentially report non-payment to credit reporting agencies or that consumers' credit reports would not be impacted by such non-payment. See Belichenko v. Gem Recovery Sys., No. 17-cv-01731 (ERK) (ST), 2017 WL 6558499, at *4 (E.D.N.Y. Dec. 22, 2017) (finding that letter's bad-credit language did not violate Section 1692e where the statement "has only one meaning, and Plaintiff has proffered no evidence that it is inaccurate").

Courts evaluate alleged violations of Section 1692e(10) under the "least sophisticated consumer" standard. Gause v. Med. Bus. Consultants, Inc., 424 F. Supp. 3d 1175, 1205 (M.D. Fla. 2019). In general, the question of whether the least sophisticated consumer would be confused or misled by a debt collector's communication is one for the jury. Reyes v. Webcollex, LLC, No. 2:19-cv-153-FtM-29MRM, 2020 WL 619097, at *4 (M.D. Fla. Feb. 10, 2020). But whether a plaintiff has plausibly alleged that a defendant's conduct violates the

least sophisticated consumer standard is a legal question for the Court. Id.

Here, Wright has failed to plausibly allege that the least sophisticated consumer would be confused, misled, or deceived by the letter's negative-credit-reporting language. Compare Gause, 424 F. Supp. 3d at 1207 (accepting allegations as true that debt collector's assertions in communication to debtor that it intended to report consumer's debt to multiple credit bureaus were actually false and, thus, deceptive means to collect a debt). Thus, Count I is dismissed without prejudice. The Court will grant Wright leave to amend this claim.

### 2. **Plaintiff's Section 1692g Claim**

Wright alleges that Defendants violated Section 1692g by "threatening negative credit reporting, which overshadows the [notice] language and coerces the consumer not to exert its rights under the FDCPA." (Doc. # 1 at ¶ 51). As an initial matter, the parties appear to agree that whether Defendants are liable under Section 1692g(b) is a question of law for the Court to decide. (Doc. # 12 at 4; Doc. # 25 at 21-22). See McCray v. Deitsch & Wright, P.A., 356 F. Supp. 3d 1358, 1362 (M.D. Fla. 2019) (citing Shimek v. Weissman, Nowack, Curry & Wilco, P.C., 323 F. Supp. 2d 1344, 1349 (N.D. Ga.

2003) ("Although the Eleventh Circuit has not considered the issue, this Court agrees with the Second, Third, and Ninth Circuits that the determination of whether language overshadows the validation notice is a question of law.")).

"[T]he Eleventh Circuit has not yet addressed FDCPA violations under Section 1692g(b), and therefore, has not yet defined what communications would 'overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt.'" McCray, 343 F. Supp. 3d at 1215; Zevon v. Balanced Healthcare Receivables, LLC, No. 6:19-cv-1937-Orl-37DCI, 2020 WL 4188040, at *3 (M.D. Fla. Jan. 7, 2020)("The Eleventh Circuit has not said what constitutes overshadowing under 15 U.S.C. § 1692g(b).").

A recent opinion from a court within this District provides a helpful overview of the state of the law outside of this Circuit:

> The Second Circuit explained that a collection activity "overshadows or contradicts the validation notice 'if it would make the least sophisticated consumer uncertain as to her rights.'" Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010). The Third Circuit considers the physical characteristics of the letter and has held that if the [Section] 1692g notice is provided in the same font, size, and color as the rest of the letter and is on the front page, the notice is not overshadowed. Wilson v. Quadramed Corp., 225 F.3d 350, 356 (3d Cir. 2000), as amended (Sept. 7, 2000). Similarly, the First Circuit has explained that,

> "Typically, however, overshadowing is based upon the visual characteristics of a collection letter, such as when a letter demands payment in large, attention-grabbing type and relegates the validation notice to fine or otherwise hard-to-read print." Pollard v. Law Office of Mandy L. Spaulding, 766 F.3d 98, 104 (1st Cir. 2014). And the Seventh Circuit held that a statement warning that a creditor had the right to pursue legal action in an initial communication did not violate [Section] 1692g(b); instead it merely alerted the consumer to the possible repercussions faced for failing to pay. Zemeckis v. Glob. Credit & Collection Corp., 679 F.3d 632, 637 (7th Cir. 2012).

Huyghue v. Shafritz & Assocs., P.A., No. 5:18-cv-29-Oc-30PRL, 2018 WL 7457827, at *4–5 (M.D. Fla. Apr. 12, 2018) (granting defendant's motion to dismiss because plaintiff had failed to state a claim for violation of Section 1692g). The Huyghue court also relied on a case that Defendants lean on: McMurray v. ProCollect, Inc., 687 F.3d 665, 671 (5th Cir. 2012).

In that case, the Fifth Circuit considered a debt collection letter (1) that placed language warning debtors that a failure to pay could have a negative effect on their credit significantly higher in the letter than the statutorily required 30-day validation language and (2) where the "threatening" language possessed different physical attributes from the notice language, and concluded that the letter did not violate Section 1692g(b). Id. at 667–68. The Fifth Circuit analyzed the letter as follows:

> The supposed threat falls in the category of
> "letters that encourage debtors to pay their debts
> by informing them of the possible negative
> consequences of failing to pay," words that do not
> overshadow the required notice language. This is
> because "one way to encourage someone with a true
> dispute to come forward and resolve that dispute is
> to inform him of the possible negative consequences
> of his continued inaction." "Not only does this
> encouragement promote payment of valid debts, it
> also promotes disclosing genuine claims of invalid
> debts[.]" "Promoting final resolution of such
> matters, either way, is inherently beneficial." The
> letter in this case essentially provided such
> warnings and nothing more. Thus, the notice
> language in [the defendant's] letter is not
> overshadowed by the letter's bad-credit warnings.

Id. at 671 (quoting Durkin v. Equifax Check Servs., Inc., 406
F.3d 410, 417-18 (7th Cir. 2005)).

After careful consideration of the collection letter
here and the relevant case law, this Court agrees with the
thoughtful reasoning in McMurray and Huyghue. First, Wright
has failed to plead any physical attribute of the credit-
warning language in the May 8 letter that overshadows the
notice language, and the Court's review of the letter
demonstrates that it does not. The credit-warning language
and the notice language are both on the front page of the May
8 letter, in the same size type and same font, and the credit-
warning language is in a regular font, while the notice
language is included in bold font. See Huyghue, 2018 WL
7457827, at *5 ("The warning and the notice are the same font,

21

size, and color, and both are on the front page of the letter."); see also Pollard, 766 F.3d at 104 (looking to a letter's "visual characteristics" in making the overshadowing determination); Wilson, 225 F.3d at 356 (same).

Second, the warning does not overshadow the notice because, as the Fifth and Second Circuits have held, such language merely informs the debtor about the possible negative consequences of failing to pay a debt and, thus, would not make the least sophisticated consumer uncertain about his rights. See Huyghue, 2018 WL 7457827, at *5 ("[T]he warning in Defendant's letter merely apprised Plaintiff of the potential consequences of failing to pay the debt [and] [t]his language encourages Plaintiff to pay her debt or dispute it if it was invalid."); see also McMurray, 687 F.3d at 671 (explaining that where the "supposed threat falls in the category of letters that encourage debtors to pay their debts by informing them of the possible negative consequences of failing to pay," such language does not overshadow the required notice language); Zemeckis, 679 F.3d at 637 (finding no violation of the FDCPA where language merely alerts consumer to possible repercussions for failure to pay).

Most of the cases that Wright relies upon in opposition are distinguishable in that they included language

threatening a consumer with possible negative consequences for non-payment, **combined with** some other urgent language of immediacy regarding when the debt must be paid. Cf. McMurray, 687 F.3d at 671 (finding no FDCPA violation where the letter provided credit warnings "and nothing more"). For example, in Yunker v. AllianceOne Receivables Management, Inc., the collection letter contained language telling the plaintiff that she was subject to "immediate collection efforts," that she should contact the defendant "as soon as possible," and that it was the debt collector's "practice to place information regarding the debt with the appropriate credit-reporting agencies." No. 10-61796, 2011 WL 13239460, at *1-2 (S.D. Fla. July 19, 2011). The court held that, "[o]n balance, these inconsistent statements are sufficient to establish a violation of [Section 1692g(b)] as a matter of law." Id. at *5; see also Vaughn v. CSC Credit Servs., Inc., No. 93-cv-4151, 1995 WL 51402 (N.D. Ill. Feb. 3, 1995) (holding that the collection letter's demand for immediate payment coupled with a threat to report the debtor to the credit bureau overshadowed or contradicted the notice requirement). A court in the Middle District of Florida recently relied on Yunker in concluding that a defendant was not entitled to judgment as a matter of law on the plaintiff's Section 1692g claim

where the collection notice indicated that the plaintiff should "resolve the matter **immediately**" by contacting the defendant to make payment and "the notice advised of (if not threatened) 'additional action' if the [d]efendant did not 'receive payment **promptly**.'" McCray, 343 F. Supp. 3d at 1217 (emphases supplied by the court).

Not so here. The letter that ARR sent on May 8 includes these sentences: "Please be advised that our client is a credit reporting client. Your credit report may have a negative impact if we do not hear from you." Earlier in the letter, it states that, "To avoid further collection activity, please remit payment in full of $984.00 directly to [ARR]." (Doc. # 1-1). The letter then advises the debtor of multiple ways in which to pay, including by mail, by phone, or online. (Id.). This language does not direct the debtor to pay by any date certain, "immediately," or even "promptly."

Wright also points to the letter's request for payment in full, along with an enclosed payment stub, to argue that the letter improperly leads the least sophisticated consumer to believe that "she would have to make payment in full on the account to avoid 'a negative impact' on her credit report, rather than simply seeking a validation of her debt as she

24

was entitled to do under [Section] 1692g." (Doc. # 25 at 10-11).

But as explained by another Florida district court, "a debt collector is 'perfectly free' to demand payment and pursue collection efforts . . . within the validation period. . . . Only if the debtor disputes the debt during the validation period, must all debt collection activities stop until the debt collector obtains verification of the debt." Decarlo v. McKinnon, No. 13-14324-CIV, 2014 WL 12214345, at *3 (S.D. Fla. July 31, 2014) (citing Durkin, 406 F.3d at 416; 15 U.S.C. § 1692g) (internal quotation marks omitted). Furthermore, Wright urges this Court to consider Francis v. Snyder, 398 F. Supp. 2d 1034 (N.D. Ill. 2005), but the Court finds that case distinguishable.

In Francis, the letter in question stated that: "If paid in full to this office, all collection activity will be stopped. . . . If you contact this office on receipt of this letter *you may* qualify for a *payment plan.* If you do not call, the balance will be pursued in full, including collection costs." Id. at 1037. This language requiring that the consumer contact the debt collector on receipt or face full collection efforts is akin to the language of immediacy discussed in the cases above. The letter here contains no such language.

In conclusion, upon reading the letter at issue in this case, the least sophisticated consumer would not be misled or confused into thinking she had to pay the debt immediately or face adverse credit consequences before her 30-day statutory validation period expired. See Rafferty v. Retrieval-Masters Creditors Bureau, Inc., No. 5:17-cv-00426-PGB-PRL, 2019 WL 1026399, at *4 (M.D. Fla. Feb. 15, 2019), report and recommendation adopted, No. 5:17-cv-426-Oc-40PRL, 2019 WL 1014554 (M.D. Fla. Mar. 4, 2019) (noting that "[t]hreats tend to overshadow validation notices when they demand action immediately or within thirty days, in contradiction of the validation notice" and recommending that judgment be entered in favor of defendant because the collection letter did not demand any action within a specified timeframe inconsistent with the validation notice); see also Belichenko, 2017 WL 6558499, at *4 (holding that statement in letter regarding debt collector's "policy" to report delinquent accounts to credit agencies did not overshadow the validation notice because "[a]t no point does it suggest to [the debtor] that she must take action within any time frame that contradicts the statutory thirty-day period") (internal quotation marks omitted).

For these reasons, the Court concludes as a matter of law that the language in the May 8 letter warning the consumer that their "credit report may have a negative impact if we do not hear from you" did not overshadow the required Section 1692g notice. Therefore, Wright's Section 1692g claim should be dismissed with prejudice. See Huyghue, 2018 WL 7457827, at *5 (granting motion to dismiss with prejudice after making same finding); see also Silberman v. Miami Dade Transit, 927 F.3d 1123, 1133 (11th Cir. 2019) (explaining that while leave to amend ought generally to be freely granted, leave to amend need not be granted when any amendment would be futile).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  The Motion to Dismiss Complaint filed by Defendant Premium Asset Recovery Corporation (Doc. # 9) is **GRANTED.**

(2)  The Motion to Dismiss Complaint filed by Defendant AR Resources, Inc. (Doc. # 12), which motion Defendant Premium Asset Recovery Corporation has joined, is **GRANTED IN PART** and **DENIED IN PART.**

(3)  Count I of the complaint is dismissed without prejudice and with leave to amend. Count II of the complaint is dismissed with prejudice.

(4)   Plaintiff Javontae Wright may file an amended complaint within 14 days of the date of this Order. Defendants will then have 14 days from the filing of the amended complaint to file their responses thereto.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 31st day of July, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE